**IN THE UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF FLORIDA**

**FORT LAUDERDALE DIVISION**

**CASE NO.:** TO BE ASSIGNED

FILED BY [signature] D.C.
APR 06 2026
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

---

**Charles Jacob Stratmann,** individually,

Plaintiff,

**MADISON INDUSTRIES, INC.,** a Delaware corporation;

**SEAKEEPER, INC.,** a Delaware corporation; and

**JOHN DOES 1–10,** unknown co-conspirators,

Defendants.

---

## VERIFIED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff Charles Jacob Stratmann ("Stratmann" or "Plaintiff"), individually, appearing **pro se** pursuant to 28 U.S.C. § 1654, files this Verified Complaint against Defendants Madison Industries, Inc. ("Madison"), Seakeeper, Inc. ("Seakeeper"), and John Does 1–10 (collectively, "Defendants"), and alleges as follows:

*This pro se complaint is filed pursuant to 28 U.S.C. § 1654. Plaintiff respectfully requests that this Court hold this pleading to less stringent standards than those drafted by attorneys. See* Haines v. Kerner, 404 U.S. 519, 520–521 (1972).

---

## NATURE OF THE ACTION

1. This is an action for trade secret misappropriation, enterprise fraud, tortious interference, unjust enrichment, and unfair trade practices arising from a seven-year scheme by Defendants to exploit Plaintiff's pioneering marine stabilization methodology, conceal competing product development, manufacture a pretextual basis for dealer termination, and capture the market that Plaintiff created.

2. Between 2018 and 2024, Plaintiff's company Starboard Yacht Group, LLC ("SYG"), of which Plaintiff is the founder and CEO, served as one of the nation's premier Seakeeper dealers,

earning Seakeeper's own "Americas Dealer of the Year" award in 2021 and simultaneously winning Humphree's top dealer designation — the only dealer in America to hold both titles concurrently. SYG achieved this status through Plaintiff's development of a proprietary integrated stabilization methodology that combined gyroscopic stabilizers with interceptor fin technology, transforming the market from "gyro versus interceptor" to "gyro plus interceptor equals total vessel optimization."

3. Defendants exploited their seven-year relationship with Plaintiff and SYG to study this methodology, secretly developed a competing product (Seakeeper Ride) that incorporated Plaintiff's market positioning, manufactured SYG's sales decline through coordinated lead diversion and inventory manipulation, and then terminated SYG's dealership citing the very decline Defendants engineered — all while concealing patent applications filed as early as July 2021.

4. Plaintiff seeks compensatory damages, treble damages under RICO and the Defend Trade Secrets Act, injunctive relief, and costs.

---

## PARTIES

5. **Plaintiff Charles Jacob Stratmann** is an individual residing in Broward County, Florida. Stratmann is the founder and Chief Executive Officer of Starboard Yacht Group, LLC, a Florida limited liability company with its principal place of business at 850 NE 3rd Street, Suite 208, Dania Beach, Florida 33004. Stratmann developed and led the implementation of the Seakeeper-Vessel-Interceptor-Complementary-Methodology described herein. As a direct and proximate result of Defendants' scheme, Stratmann was personally injured in his individual business and property, including: (a) loss of personal income directly dependent upon SYG's revenue performance; (b) exposure to personal liability under personal guarantees executed by Stratmann individually as SYG's sole officer in connection with SYG's operating capital and inventory financing obligations — obligations that Defendants' manufactured sales decline made impossible to service; and (c) conversion of Stratmann's individual property rights through the unauthorized $30,000 EPLI settlement disbursed without Stratmann's knowledge, consent, or signature — a payment directly diverted from Stratmann's actual and constructive ownership interest. Stratmann brings this action in his individual capacity only. *See* Holmes v. Securities Investor Protection Corp., 503 U.S. 258, 268 (1992) (plaintiff must allege direct injury to sustain RICO standing). *SYG is not a named plaintiff in this action. See* Rowland v. Cal. Men's Colony, 506 U.S. 194, 201–202 (1993) (artificial entities may not appear pro se).

6. **Defendant Madison Industries, Inc.** is a Delaware corporation with its principal place of business at 444 W. Lake St., Suite 4400, Chicago, IL 60606. Madison is a privately held industrial conglomerate controlled by Larry Gies. Madison acquired 100% ownership of Seakeeper, Inc. on or about April 5, 2018, and has exercised strategic direction and operational control over Seakeeper's dealer relationships, product development, and

market strategy since that date, including the appointment of Andrew Semprevivo as Seakeeper's President and CEO.

7. **Defendant Seakeeper, Inc.** is a Delaware corporation with its principal place of business at 45310 Abell House Lane, Suite 350, California, Maryland 20619. Seakeeper manufactures and distributes marine gyroscopic stabilizers and, since 2023, the "Seakeeper Ride" interceptor-based stabilization system. Seakeeper operates through a network of certified dealers, of which SYG was a member from approximately 2018 through December 2, 2024.

8. **John Does 1–10** are individuals and/or entities whose identities are presently unknown to Plaintiff, who participated in, directed, or facilitated the scheme described herein, including but not limited to corporate officers of Madison, Seakeeper sales representatives, and third-party actors who coordinated with Defendants. On information and belief, the individual persons conducting the enterprise's affairs include, among others identified in paragraph 50: Larry Gies, Andrew Semprevivo, Chase Russell, Brad Meid, Jonathan Kappock, and Christopher Kleppin.

---

## FACTUAL ALLEGATIONS

### A. Plaintiff's Proprietary Methodology: The SVICM

9. Plaintiff's core trade secret is the **Seakeeper-Vessel-Interceptor-Complementary-Methodology** ("SVICM") — a systematic process Plaintiff developed personally for simultaneously selling, installing, and optimizing both gyroscopic stabilizers and interceptor-fin systems on marine vessels.

10. Where the marine industry viewed gyroscopic stabilizers (Seakeeper) and electronic interceptor fins (Humphree, NAIAD, Bennett) as competing or alternative technologies, Plaintiff developed a proprietary thesis that the two technologies were complementary: a gyro eliminates rolling motion but cannot address pitch, while interceptors reduce pitch but cannot match a gyro's roll-stabilization; combined, they achieve total vessel motion control.

11. Plaintiff's SVICM comprised six proprietary components:

(a) **Vessel Assessment Protocol**: A systematic pre-installation survey of hull type, use profile, and existing equipment to determine the optimal stabilization configuration uniquely suited to each vessel;

(b) **Complementary-Product Thesis**: A formalized sales and customer education methodology for converting buyers who entered inquiring about one technology into purchasers of both;

(c) **Technical Integration Specifications**: Installation protocols for running both systems without interference or signal conflict, developed through Plaintiff's own testing and iteration between 2018 and 2021;

(d) **Demo Vessel Investment**: Constructing and maintaining demonstration vessels at a cost exceeding $1 million to prove the complementary thesis through live customer experience;

(e) **Customer Acquisition Protocol**: Training sales staff in a specific methodology for identifying and converting skeptical customers from single-product buyers to dual-system purchasers; and

(f) **Dealer Enablement Process**: Developing service protocols, warranty handling procedures, and aftermarket support processes specific to integrated stabilization systems.

12. The SVICM was not published, was not available to the general public, and was shared only within the confidential dealer-manufacturer relationship. Plaintiff invested over $4 million in developing and implementing this methodology through SYG between 2018 and 2024 — investments made personally by Plaintiff as SYG's sole decision-maker, which exposed Plaintiff to personal guarantee obligations and directly reduced Plaintiff's personal wealth.

**B. SYG's Market Leadership and Dual Awards (2021)**

13. By 2021, the SVICM had produced extraordinary results. In that year, SYG earned:

(a) **Seakeeper Americas Dealer of the Year** — the manufacturer's highest recognition for dealer performance, based on sales volume, customer satisfaction, and service excellence; and

(b) **Humphree Top Dealer** — the interceptor manufacturer's corresponding top designation.

14. SYG was the only dealer in the United States to simultaneously hold both awards. This dual recognition was a direct result of Plaintiff's complementary-product thesis: by selling gyros AND interceptors together rather than one or the other, SYG expanded the total addressable market for both manufacturers.

15. SYG's annual Seakeeper revenue peaked at approximately $1,452,966 in 2021, reflecting the success of the SVICM, and Plaintiff's personal income as CEO and principal was dependent on this revenue performance.

**C. Seakeeper's Secret Patent Activity (July 2021 – June 2025)**

16. On information and belief, Seakeeper filed a provisional patent application in approximately July 2021 covering interceptor-based stabilization technology — the same technology category that Plaintiff was pioneering through the complementary-product methodology.

16. On information and belief, Seakeeper filed a non-provisional patent application in approximately July 2022, and U.S. Patent No. [number under investigation — on information and belief, assigned to Seakeeper, Inc.] was granted on approximately June 10, 2025.

17. Throughout the period from July 2021 through December 2, 2024, Seakeeper concealed its patent applications and competing product development from Plaintiff and SYG. Seakeeper continued to accept SYG's sales, service, and market development efforts without disclosing

that Seakeeper was developing a product (Seakeeper Ride) that would directly compete with the complementary integration Plaintiff had pioneered.

18. This concealment induced Plaintiff and SYG to continue investing in demo vessels, marketing, training, and market development — investments Plaintiff would not have made had he known Seakeeper was preparing to launch a competing product and terminate SYG's dealership.

**D. Seakeeper Ride Launch and the 38-Day Timeline (April–May 2023)**

20. On April 18, 2023, SYG publicly launched the first Humphree Lightning-equipped vessel in the United States, demonstrating the viability of integrated interceptor + gyro stabilization in the American market.

21. Thirty-eight (38) days later, on May 26, 2023, Seakeeper publicly debuted its "Seakeeper Ride" product — an interceptor-based stabilization system that incorporated the same complementary-positioning strategy Plaintiff had pioneered.

22. This 38-day gap — between Plaintiff's proof-of-concept launch and Seakeeper's product debut — demonstrates that Seakeeper Ride was developed with knowledge of and reliance upon Plaintiff's market validation work.

**E. Manufactured Sales Decline (2022–2024)**

23. Following the 2021 peak, SYG's Seakeeper sales declined precipitously:

| Year | Approximate Revenue | Key Event |
|---|---|---|
| **2021** | **$1,452,966** | Dealer of the Year (peak) |
| 2022 | ~$1,100,000–$1,800,000 | Patent secretly filed (July 2022) |
| **2023** | **~$486,000** | **73% decline** — Ride launched; Brad Meid replaces Chase Russell |
| 2024 | ~$374,000–$444,000 | Kappock positioned as replacement |

24. This decline was not organic. It was manufactured through coordinated actions including:

(a) **Sales Representative Replacement**: Chase Russell, SYG's long-standing Seakeeper sales representative, was replaced by Brad Meid, who diverted leads away from SYG and pressured SYG to acquire excess inventory while directing customers to other dealers;

(b) **Inventory Loading**: Going into 2023, SYG carried over $1.5 million in Seakeeper inventory, much of it ordered through Chase Russell before his reassignment. The replacement

representative (Meid) simultaneously directed new customer leads away from SYG while SYG was burdened with aging stock;

(c) **Lead Diversion**: Meid's commission structure required hitting quarterly quotas, incentivizing him to route leads to channels where he received credit, excluding SYG; and

(d) **Channel Steering**: Defendants positioned Jonathan Kappock's Land and Sea Professionals as SYG's replacement dealer, awarding Kappock's first-year operation "Best Newcomer of the Year 2023" — an unprecedented first-year award.

**F. The Kappock Pipeline: From SYG Employee to Seakeeper Dealer**

25. Jonathan Kappock was employed as a "technical advisor for Seakeeper" before SYG hired him in approximately August 2019. During his employment at SYG (August 2019 through approximately August 2020), Kappock had direct access to the SVICM, customer lists, sales processes, installation methodology, and dealer enablement protocols.

26. On or about January 27, 2021, Kappock filed an EEOC Charge of Discrimination (No. 510-2021-2181) against SYG through attorney Christopher Kleppin (Florida Bar No. 625485), claiming disability discrimination, retaliation, and overtime violations. The EEOC charge falsely stated that SYG employed "500+" individuals — a figure Kleppin's co-plaintiff Paul Forsythe later admitted under oath was fabricated. See Forsythe Deposition, November 21, 2023, at p. 93 ("Q. You knew there were not 500 employees there, right? A. Yes.").

27. Kleppin drafted the false 500-employee certification. See Forsythe Deposition at p. 91 ("Q. Who actually prepared the document? A. My lawyer typed this up.").

28. A $30,000 settlement was paid to Kappock through SYG's EPLI carrier without Plaintiff's knowledge, consent, or signature. This unauthorized disbursement constituted a direct conversion of Plaintiff's property rights and a predicate act as described in Count III.

29. By 2023, Kappock had opened Land and Sea Professionals as a Seakeeper dealer in Deerfield Beach, Florida — SYG's competitive territory. In his first year of operation, Seakeeper awarded Kappock "Best Newcomer of the Year 2023."

30. Every individual who filed claims against SYG through attorney Kleppin subsequently entered the Seakeeper ecosystem:

| Individual | Kleppin Claim | Current Seakeeper Role |
|---|---|---|
| Paul Forsythe | FLSA/whistleblower (22-60854-AHS) | Seakeeper Specialist, All Points Boats |
| Jonathan Kappock | EEOC/FCRA (510-2021-2181) | Seakeeper Dealer, Land and Sea Professionals |
| Mark Quaranto | Witness (pressured statement) | "Head guy for Seakeeper" at |

| Individual | Kleppin Claim | Current Seakeeper Role |
|---|---|---|
| | | current employer |
| Fred Hoffman | Named co-victim ¶¶94–96 | Alleged TriSea employee |

**G. December 2, 2024: Termination Without Contractual Cure**

31. On December 2, 2024, Seakeeper terminated SYG's Certified Dealer Non-Exclusive Agreement, purportedly under Article XI, Section 72.4, citing "consistent year-over-year decline in sales" and other pretextual reasons. The termination was "effective immediately" with no opportunity for the contractual cure period required under the Agreement.

32. Seakeeper's stated termination grounds included "sales performance" — the very decline that Defendants manufactured through the lead diversion and inventory loading scheme described above.

33. On March 4, 2026, Seakeeper's counsel (Faegre Drinker Biddle & Reath LLP) issued a further cease-and-desist letter in which counsel admitted that Seakeeper had "inadvertently omitted the Seakeeper Ride agreement from its prior termination notice." This admission establishes that from December 2, 2024 through at least February 11, 2026 — a period of approximately 14 months — SYG remained a valid Seakeeper Ride dealer, rendering all C&D communications during that period legally defective as to Ride products.

**H. Madison Industries' Direction and Control**

34. Madison Industries acquired 100% ownership of Seakeeper on or about April 5, 2018. At that time, Madison appointed Andrew Semprevivo as Seakeeper's "newly appointed President and CEO," displacing prior management.

35. Since the acquisition, every strategic decision of Seakeeper — including product development, patent strategy, dealer management, and the termination of SYG — has been made under Madison's direction and with Madison's approval.

36. On information and belief, Madison is currently pursuing an initial public offering of its subsidiary Madison Air, with a confidential S-1 filed in January 2026 and made public on or about March 9, 2026. Material litigation against Madison threatens the valuation and disclosure obligations of this IPO.

**I. The Faegre Drinker Draft Complaint Error**

37. The draft complaint attached to the March 4, 2026 C&D letter contains a signature block reading "Attorneys for Defendant Mobivity Holdings Corp." — a party unrelated to this dispute. This error demonstrates that Defendants' threatened litigation is a recycled pressure tactic, not a genuine filing.

---

## COUNT I — MISAPPROPRIATION OF TRADE SECRETS (DTSA, 18 U.S.C. § 1836)

*Alternatively pleaded under Fed. R. Civ. P. 8(d)(2).*

38. Plaintiff incorporates paragraphs 1 through 37 as though fully set forth herein.

39. Plaintiff, individually as the developer and architect of the SVICM, and through SYG as the operational vehicle for its commercialization, holds an ownership interest in the SVICM within the meaning of 18 U.S.C. § 1839(3), as the SVICM is related to a product or service used in, or intended for use in, interstate or foreign commerce.

40. Defendants misappropriated the SVICM by improper means, including breach of a duty to maintain secrecy imposed by the dealer relationship, unauthorized disclosure through Kappock's direct employment at SYG, and use of the methodology in commerce without Plaintiff's consent.

41. Defendants' misappropriation was willful and malicious, entitling Plaintiff to exemplary damages of up to two times the amount of damages awarded. 18 U.S.C. § 1836(b)(3)(C).

42. Plaintiff has suffered direct personal damages through loss of income, personal guarantee exposure, and loss of business and property, and is entitled to injunctive relief, actual damages, unjust enrichment, and reasonable royalty.

---

## COUNT II — MISAPPROPRIATION OF TRADE SECRETS (FUTSA, Fla. Stat. § 688.002)

*Alternatively pleaded under Fed. R. Civ. P. 8(d)(2) to the extent not preempted by DTSA.*

43. Plaintiff incorporates paragraphs 1 through 37 as though fully set forth herein.

44. The SVICM constitutes a "trade secret" within the meaning of Fla. Stat. § 688.002(4) because it (a) derives independent economic value from not being generally known, and (b) was the subject of reasonable efforts to maintain its secrecy, including confidential dealer relationships, restricted access, and the absence of public disclosure.

45. Defendants acquired knowledge of the SVICM through the confidential dealer relationship and through Kappock's direct employment at SYG, and used and disclosed this trade secret without Plaintiff's consent.

46. Defendants' misappropriation was willful and malicious, entitling Plaintiff to exemplary damages of up to twice the amount of actual damages. Fla. Stat. § 688.004(2).

47. Plaintiff has suffered damages including lost revenues, loss of competitive advantage, and diminished market position, in an amount to be determined at trial but believed to exceed $25,000,000.

---

## COUNT III — VIOLATION OF RICO (18 U.S.C. § 1962(c))

48. Plaintiff incorporates paragraphs 1 through 37 as though fully set forth herein.

49. The following individuals and entities are "persons" within the meaning of 18 U.S.C. § 1961(3): Madison Industries, Inc.; Seakeeper, Inc.; Larry Gies (controlling owner of Madison); Andrew Semprevivo (President and CEO of Seakeeper); Chase Russell (former Seakeeper regional sales representative); Brad Meid (Seakeeper regional sales representative); Jonathan Kappock (Seakeeper dealer, Land and Sea Professionals); Christopher Kleppin (attorney who coordinated the filing of materially false EEOC charges); and John Does 1–10.

50. The above-named persons, together with co-conspirators known and unknown, constitute an associated-in-fact "enterprise" within the meaning of 18 U.S.C. § 1961(4) — a group of individuals and legal entities associated in fact for the common purposes of: (1) exploiting Plaintiff's SVICM without compensation; (2) concealing competing product development from Plaintiff to induce continued investment; (3) manufacturing pretextual grounds for SYG's termination; (4) transferring SYG's market position to a Kleppin-connected replacement dealer; and (5) eliminating Plaintiff as a market competitor. This enterprise is distinct from each individual "person" conducting its affairs. *See Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001).

51. Defendants and Enterprise Members conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1) and 1961(5), including the following predicate acts:

(a) **Mail Fraud** (18 U.S.C. § 1341): Filing and causing to be filed materially false statements with the EEOC, including the fabricated "500+" employee count; specifically, the EEOC Charge No. 510-2021-2181 mailed to the EEOC and delivered to SYG, containing factual allegations that Defendant's co-conspirator Paul Forsythe later admitted under oath were false;

(b) **Wire Fraud** (18 U.S.C. § 1343): Using interstate electronic communications — including emails and digital communications among Seakeeper, Madison, Chase Russell, Brad Meid, and Jonathan Kappock — to coordinate lead diversion, inventory manipulation, and dealer replacement;

(c) **Obstruction of Justice** (18 U.S.C. § 1503): Manufacturing evidence through secret recordings of disabled employee Fred Hoffman in connection with FLSA and EEOC proceedings;

(d) **Wire Fraud** (18 U.S.C. § 1343): Using interstate electronic communications and financial transfer mechanisms — including digital authorization communications with SYG's EPLI carrier — to cause the $30,000 settlement disbursement to Jonathan Kappock without Plaintiff's knowledge, consent, or signature, thereby misappropriating Plaintiff's individual property rights through false pretenses presented to the insurance carrier; and

(e) **Wire Fraud** (18 U.S.C. § 1343): Using interstate electronic communications — including email and electronic correspondence between Seakeeper and SYG representatives from July 2021 through December 2, 2024 — to affirmatively represent a continuing and exclusive dealership partnership with Plaintiff while simultaneously and clandestinely filing patent applications (July 2021 provisional, July 2022 non-provisional) and developing Seakeeper Ride, thereby inducing Plaintiff's sustained multi-million-dollar personal and business investment through material misrepresentations transmitted in interstate commerce.

52. The pattern of racketeering activity spans from approximately 2019 through 2025, involves at least five related predicate acts, and demonstrates both closed-ended and open-ended continuity under *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229 (1989).

53. As a direct and proximate result of Defendants' RICO violations, Plaintiff has been individually injured in his business and property, including through loss of personal income, personal guarantee exposure, and conversion of personal property rights. Plaintiff is entitled to treble damages and costs of suit. 18 U.S.C. § 1964(c). *See Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268 (1992).

---

## COUNT IV — RICO CONSPIRACY (18 U.S.C. § 1962(d))

54. Plaintiff incorporates paragraphs 1 through 53 as though fully set forth herein.

55. Defendants and Enterprise Members knowingly agreed to and did conspire to violate 18 U.S.C. § 1962(c) by agreeing to conduct and participate in the conduct of the enterprise's affairs through the pattern of racketeering activity described herein. Each co-conspirator adopted the goal of facilitating the enterprise's objectives.

---

## COUNT V — TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP

*Alternatively pleaded under Fed. R. Civ. P. 8(d)(2) to the extent not preempted by FUTSA § 688.008.*

56. Plaintiff incorporates paragraphs 1 through 37 as though fully set forth herein.

57. Plaintiff, individually, had valid and existing business relationships with SYG's customers, with Humphree AB, and within the broader marine stabilization market — relationships through which Plaintiff derived personal income and upon which Plaintiff's personal financial standing depended.

58. Defendants knew of these relationships and intentionally interfered with them by (a) diverting leads and customers away from SYG, thereby eliminating Plaintiff's source of personal income; (b) positioning Kappock's Land and Sea Professionals as SYG's replacement dealer; (c) terminating SYG's dealership on pretextual grounds; and (d) issuing C&D letters designed to chill SYG's and Plaintiff's ongoing customer relationships.

59. Defendants' interference was without justification or privilege, was accomplished through fraud and concealment, and directly caused damage to Plaintiff individually.

60. Plaintiff has suffered damages including lost customer relationships, lost personal income, and diminished market standing, in an amount to be determined at trial.

---

## COUNT VI — VIOLATION OF FDUTPA (Fla. Stat. § 501.204)

61. Plaintiff incorporates paragraphs 1 through 37 as though fully set forth herein.

62. Defendants engaged in unfair and deceptive trade practices within the meaning of Fla. Stat. § 501.204 by (a) concealing competing product development during an active dealer relationship with Plaintiff; (b) manufacturing a pretextual basis for termination of Plaintiff's dealership; (c) falsely representing that SYG's sales decline was organic rather than Defendant-engineered; and (d) misrepresenting the nature of the dealer partnership with Plaintiff while secretly preparing to capture the market Plaintiff created.

63. These practices were likely to deceive a reasonable party in Plaintiff's position and caused actual damages to Plaintiff.

64. Plaintiff is entitled to actual damages, declaratory and injunctive relief, and reasonable attorneys' fees. Fla. Stat. § 501.211.

---

## COUNT VII — UNJUST ENRICHMENT

*Alternatively pleaded under Fed. R. Civ. P. 8(d)(2) to the extent not preempted by FUTSA § 688.008.*

65. Plaintiff incorporates paragraphs 1 through 37 as though fully set forth herein.

66. Defendants received a substantial benefit from Plaintiff's SVICM and personal investment, including market validation, customer education, supply-chain development, and the complementary-product positioning thesis that Seakeeper Ride now directly exploits commercially.

67. Plaintiff conferred this benefit through his personal efforts, personal financial commitments, and personal guarantee obligations — not merely through SYG as an entity.

68. Defendants accepted and retained this benefit under circumstances making it inequitable to do so without compensating Plaintiff.

69. Plaintiff is entitled to restitution and disgorgement of the benefit Defendants received.

---

## COUNT VIII — FRAUDULENT CONCEALMENT

70. Plaintiff incorporates paragraphs 1 through 37 as though fully set forth herein.

71. Defendants concealed material facts — including the development of Seakeeper Ride, the filing of patent applications beginning July 2021, and the predetermined plan to terminate SYG's dealership — while owing a duty to disclose these facts to Plaintiff under the confidential dealer relationship.

72. Defendants' concealment was intentional and specifically designed to induce Plaintiff's continued personal and business investment in the dealership.

73. Plaintiff individually and through SYG justifiably relied on Defendants' continued representation of partnership, investing over $4 million through SYG in demo vessels, training, and market development — investment decisions made by Plaintiff personally as CEO, directly resulting in personal guarantee exposure and personal financial harm.

74. As a direct and proximate result of Defendants' fraudulent concealment, Plaintiff has suffered damages in his individual business and property in an amount to be determined at trial.

---

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

(a) Enter judgment in Plaintiff's favor on all Counts;

(b) Award compensatory damages in an amount to be determined at trial;

(c) Award treble damages under 18 U.S.C. § 1964(c) (RICO);

(d) Award exemplary damages under 18 U.S.C. § 1836(b)(3)(C) (DTSA) and Fla. Stat. § 688.004(2) (FUTSA);

(e) Enter preliminary and permanent injunctive relief:

(f) Enjoining Defendants from using or disclosing Plaintiff's trade secrets and the SVICM;

(ii) Requiring Defendants to account for and disgorge all profits derived from misappropriation;

(iii) Requiring preservation of all documents and communications relevant to the claims herein;

(f) Award reasonable attorneys' fees and costs under 18 U.S.C. § 1836(b)(3)(D), Fla. Stat. § 688.005, and Fla. Stat. § 501.211 upon entry of appearance by counsel;

(g) Award pre-judgment and post-judgment interest at the applicable rate; and

(h) Award such other and further relief as the Court deems just and proper.

---

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury on all issues so triable pursuant to Rule 38(b), Fed. R. Civ. P.

---

Respectfully submitted,

---

Charles Jacob Stratmann Pro Se Plaintiff 850 NE 3rd Street, Suite 208 Dania Beach, FL 33004
Telephone: (954) 873-8546 Email: jake@starboardyacht.com

Date: To be completed at signature.

---

## VERIFICATION

I, Charles Jacob Stratmann, verify under penalty of perjury pursuant to 28 U.S.C. § 1746 that I have read this Complaint and that the factual allegations contained herein are true and correct to the best of my knowledge, information, and belief. I understand that willful misstatement of facts may subject me to sanctions under Fed. R. Civ. P. 11.

Executed on: To be completed at signature.

---

Charles Jacob Stratmann Pro Se Plaintiff

---

## REQUIRED FILING ATTACHMENTS (PREPARE BEFORE CLERK SUBMISSION)

- ☐ **JS 44 Civil Cover Sheet** — Southern District of Florida (current version)
- ☐ **AO 440 Summons** × 2 — one for Madison Industries, Inc.; one for Seakeeper, Inc.
- ☐ **Waiver of Service Packet** × 2 — AO 398/399 forms with return envelopes
- ☐ **Filing Fee**: $405 (civil case) — check/money order payable to "Clerk, U.S. District Court" — OR — AO 240 Application to Proceed In Forma Pauperis if applicable

---

*COMPASS VERIFICATION STATUS: See SKR_PROSE_GATE_CHECKLIST_20260330.md — all 13 gates must be checked BEFORE CEO signature.*