**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

**CASE No. 26-CV-61001-ARTAU/STRAUSS**

**CHARLES JACOB STRATMANN**,

Plaintiff,

v.

**MADISON INDUSTRIES, INC.**,
**SEAKEEPER, INC.**, and **JOHN DOES 1-10**,

Defendants.

**DEFENDANTS' REPLY IN SUPPORT OF**
**MOTION TO QUASH OR STRIKE WAIVERS OF SERVICE**

Under Local Rule 7.1(c)(1) Defendants Madison Industries, Inc. and Seakeeper, Inc. respectfully submit this reply memorandum in support of Defendants' Motion to Quash or Strike Waivers of Service (the "Motion") (Doc. 26). Plaintiff Charles Jacob Stratmann's Opposition and other filings further confirm that Stratmann did not timely accept Defendants' offers to waive service, and ultimately failed to timely perfect service, in an effort to force Defendants into default. The Court should reject Stratmann's gamesmanship and grant Defendants' Motion.

## INTRODUCTION

Plaintiff's Opposition to Defendants' Motion to Quash or Strike Waivers of Service (the "Opposition") establishes why the Court should grant Defendants' Motion. In Defendants' Motion, they argued that Stratmann failed to timely perfect service. Defendants explained that Stratmann failed to serve Defendants, rebuffed Defendants' offers to waive service, and only later filed waivers after missing this Court's service deadline. Stratmann's Opposition confirms this sequence of events. Defendants also argued that Stratmann's failure to timely serve them was not an innocent

mistake, but rather the product of a misplaced strategy to force Defendants into default. Stratmann's application for a clerk's default proved Defendants right. (*See* Doc. 27).[1] Because Stratmann failed to timely serve Defendants and cannot provide adequate grounds to support a second extension of the service deadline, the Court should quash or strike the waivers of service.

## ARGUMENT

### I. Stratmann's Opposition establishes that he failed to follow Rule 4's procedural requirements, rebuffed Defendants' offer to waive service, and then failed to timely perfect service of process.

Stratmann's Opposition confirms all of the material facts in Defendants' Motion. The Opposition recounts each of Stratmann's failed attempts at service of process and deficient requests for waiver of service, often relying on *Defendants'* declaration. (Doc. 29 at 2–4). Stratmann does not provide any evidence that he served Defendants or properly requested a waiver of service under Rule 4. Stratmann takes issue only with Defendants' characterization that he "rebuffed" their offers to waive service. (Doc. 29 at 5). But he concedes that Defendants repeatedly offered to waive service, that Defendants repeatedly asked him to confirm whether he would accept waivers of service, and that he ultimately never told Defendants that he would accept waivers. (*Id.* at 2–4). Curiously, Stratmann does not address the fact that he told Defendants' counsel that he could serve Defendants, rather than accept their offers to waive service, to trigger a shorter 21-day response deadline. (Doc. 26 at 3). Stratmann's Opposition confirms that he never accepted Defendants' offers to waive service.

Stratmann's Opposition also confirms that he failed to timely perfect service of process. Stratmann does not offer any argument to rebut Defendants' authorities establishing that a waiver of service is not effective until filed with the Court. (*See* Doc. 26 at 7–8). He concedes that (i) "Rule

[1] The clerk denied Stratmann's Motion for Entry of Default on September 23, 2026. (*See* Doc. 28.)

4(d)(4) treats the action as proceeding 'as if a summons and complaint had been served' at the time a waiver is filed," and (ii) "that the September 17 filing post-dates the August 23 deadline in the Court's extension order[.]" (Doc. 29 at 5). These concessions establish that service was untimely. In fact, Stratmann's Opposition goes a step further and admits that he never even *accepted* Defendants' offers to waive service until weeks after the service deadline had already lapsed. (*See* Doc. 30 ¶ 6 ("The filing was my approval and acceptance of the waivers[.]")). By Stratmann's own account, he failed to serve Defendants, failed to accept their offers to waive service, and failed to file any executed waivers of service by the Court's already-extended service deadline.

## II. The Court should not extend the service deadline a second time.

Because Stratmann never properly served Defendants, told Defendants' counsel he had not decided whether he would accept waivers, and only attempted to perfect waivers of service after the service deadline, he now asks the Court to extend that deadline. The Court should reject this request. The Court already extended Stratmann's service deadline by 60 days. (Doc. 22). Stratmann cannot satisfy good cause and excusable neglect to obtain a second extension. Nor can he establish any other ground to support a discretionary extension of the service deadline. Stratmann intentionally waited until after the service deadline to file the waivers of service. The Court should not reward Stratmann for his gamesmanship and should hold him to the Court-imposed service deadline.

### A. Stratmann fails to establish good cause and excusable neglect.

As explained in Defendants' Motion, Stratmann cannot establish good cause and excusable neglect to extend the service deadline a second time, to 164 days after the filing of the Complaint. (*See* Doc. 26 at 8–9). Defendants offered to waive service months ago in July, but Stratmann intentionally held on to those offers until after the service deadline lapsed. (*See* Doc. 30 ¶ 6 (stating

that Stratmann "held the executed waivers intending to file them" for two months)). This was a transparent attempt to force Defendants into default. Stratmann's strategic choice cannot support the good cause or excusable neglect needed to obtain a second extension of the service deadline. *See Butts v. Cnty. of Volusia*, 222 F.3d 891, 892 n.2 (11th Cir. 2000) (holding that a party cannot establish good cause for delay caused by the party's "strategic decision").

Stratmann now attempts to argue that he acted in good faith. (Doc. 29 at 7–8). But the record exposes the opposite. As explained in Defendants' Motion, Stratmann first refused to accept Defendants' offers to waive service, in an attempt to shorten their response deadline, and then later filed waivers of service after 60 days had elapsed, in an attempt to force Defendants into default. (Doc. 26 at 4–5). Stratmann's own filings confirm this strategy. Just days after filing waivers of service, Stratmann moved for clerk's default. (Doc. 27). But Defendants had already filed their Motion that same day, so the Clerk quickly rejected Stratmann's application. (Doc. 28). Now that Stratmann's strategy has failed, he scrambles to claim good faith. He now "waives any right to seek entry of default or default judgment" and agrees not to "appeal the Clerk's non-entry or renew the application." (Doc. 29 at 7). But the cat is out of the bag. Stratmann intentionally waited to file the waivers of service—and intentionally blew the service deadline in the meantime—in an attempt to force Defendants into default. Perhaps for this reason, Stratmann does not even attempt to argue good cause and excusable neglect. (Doc. 29 at 5–7 (arguing the Court has discretion to extend the service deadline even without a showing of good cause)).

**B. Stratmann fails to establish grounds for a discretionary extension.**

Without good cause or excusable neglect to extend the service deadline, Stratmann must rely on the Court's discretionary authority to extend the service deadline. (Doc. 29 at 5–7). The Court should not exercise its discretion to extend the deadline for three reasons.

***First***, Stratmann's authorities are distinguishable. Stratmann relies on *Horenkamp v. Van Winkle & Co.*, 402 F.3d 1129 (11th Cir. 2005) and *Lepone-Dempsey v. Carroll Cnty. Comm'rs*, 476 F.3d 1277 (11th Cir. 2007) to argue that the Court has discretion to extend the service deadline even in the absence of good cause. (Doc. 29 at 5). But neither case is on point. In *Horenkamp*, the plaintiff's untimely service was the result of an honest mistake. 402 F.3d at 1130. And the district court exercised its discretion to deny the defendants' motion to dismiss for failure to timely perfect service because dismissal would have resulted in the statute of limitations barring the plaintiff's complaint. *Id*. at 1133. The Eleventh Circuit affirmed, observing that the Advisory Committee Note to Rule 4 provides that relief from a service deadline may be justified "if the applicable statute of limitations would bar the refiled action, or if the defendant is evading service or conceals a defect in attempted service." *Id*. at 1132–1133. In *Lepone-Dempsey*, the Eleventh Circuit similarly reversed the district court for failing to consider the running of the statute of limitations when deciding whether to grant a discretionary extension of the service deadline. 476 F.3d at 282.

This case is not like *Horenkamp* or *Lepone-Dempsey*. Stratmann obtained a 60-day extension of the service deadline and knew the date certain on which he had to perfect service. His delay was caused not by an innocent mistake, but by his intentional strategy. Stratmann does not raise any statute of limitations issue (and, in any event, preserving this action would make little sense given his duplicative claims pending in the District of Maryland). And Stratmann cannot claim that Defendants evaded service or concealed a defect in service. Quite the opposite. Defendants *repeatedly* informed Stratmann that his attempts at service were defective, *repeatedly* offered to accommodate him with their own waivers of service, and *repeatedly* flagged that Stratmann had not accepted or filed their offers to waive service. (Doc. 26 at 2–4).

***Second***, the factors Stratmann relies on for a discretionary extension are unsupported by both the law and facts. Stratmann requests that the Court exercise its discretion to extend the service deadline because (a) Defendants had actual notice of this action, (b) Stratmann relied on Defendants' directions, (c) Stratmann's failure did not cause delay, and (d) Stratmann is *pro se*. (Doc. 29 at 5–6). None of these factors—individually or together—support an extension here.

As for actual notice, Stratmann relies on *Manufacturers Hanover Tr. Co. v. Ponsoldt*, 51 F.3d 938 (11th Cir. 1995). (*Id*. at 5). But *Ponsoldt* confirms that actual notice does not cure defective service. 51 F.3d at 940. And the Eleventh Circuit has held that a district court does not abuse its discretion by declining to extend the time to serve a defendant who has actual notice of a lawsuit. *See Bos. v. Potter*, 185 F. App'x 853, 854 (11th Cir. 2006) (affirming dismissal despite actual notice of lawsuit and running of statute of limitations).

As for reliance, Stratmann's claim that he relied on Defendants' direction does not withstand any scrutiny. Legally, he cites no relevant authority for this factor. Factually, Stratmann did not rely on Defendants' direction. To the contrary, Defendants repeatedly offered to waive service, repeatedly stated that they had not been served to date, and repeatedly requested that Stratmann confirm he would accept their offers to waive service *and file* the waivers of service. (Doc. 26 at 2–4). Stratmann failed to timely perfect service because he *did not* follow Defendants' explicit request to accept and file the waivers of service. *See In re Trasylol Prods. Liab. Litig.*, No. 08-MD-01928, 2011 WL 830287, at *8 (S.D. Fla. Mar. 8, 2011) (denying an extension of the service deadline in part because the defendant "put Plaintiffs on clear notice that service had never been perfected and Plaintiffs simply ignored their obligations").

As for delay, Stratmann fails to address why he waited until 164 days after filing this action and 25 days after the service deadline to file the waivers of service. Instead, Stratmann focuses on

the fact that Defendants conferred with him regarding their Motion five days after he filed the waivers. (Doc. 29 at 6). But Defendants' diligence does not excuse Stratmann's intentional disregard of this Court's deadline.

Finally, Stratmann's *pro se* status does not support the requested extension. *Pro se* parties must follow the rules. *Horne v. Cava*, No. 26-CV-20273, 2026 WL 458571, at *2 (S.D. Fla. Feb. 18, 2026). And, "[w]hile the complaints of *pro se* litigants should be liberally construed," the Eleventh Circuit has explained that "[l]iberal construction does not mean liberal deadlines." *Clarke v. Health & Hum. Servs.*, 180 F. App'x 840, 842 (11th Cir. 2006). Stratmann knew his service deadline was on August 23, 2026. He knew how to seek an extension of that deadline—he had already done so in this case. (Doc. 20). And Stratmann is no stranger to federal court; he is litigating numerous cases before both this Court and the District of Maryland. (Doc. 26 at 4 n.1, 5 n.2). His *pro se* status does not exempt him from complying with Court deadlines.

***Third***, the Court should not exercise its discretion to reward Stratmann's lack of good faith. At bottom, "[c]ourts normally require some showing of good faith on the part of the party seeking an enlargement [of the time to serve] and some reasonable basis for noncompliance within the time specified." *In re Trasylol Prods. Liab. Litig.*, 2011 WL 830287, at *8. Stratmann cannot show good faith. He intentionally waited to accept and file the waivers of service until more than 60 days had elapsed, hoping to force Defendants into default. Nor does Stratmann have any other reasonable basis for his failure to comply with the service deadline. The Court already extended the deadline by 60 days, Defendants repeatedly offered to waive service before the deadline, and Stratmann simply sat on those offers until nearly a month after the service deadline. Under these circumstances, the Court should not grant Stratmann a second extension.

**III. Alternatively, the Court should grant Defendants an extension of time to respond to the Complaint.**

If the Court finds that Stratmann's conduct somehow complied with Rule 4 and also grants him an extension (rendering the filed waivers timely), Defendants request that the Court extend their deadline to respond to the Complaint to 30 days after the Court's ruling on the Motion. Stratmann never communicated that he was accepting the waivers of service until the Clerk docketed the filed waivers on September 18, 2026. Given Stratmann had rebuffed and then ignored Defendants' prior offers to waive service and continued to litigate his duplicative "intervenor" claims in the District of Maryland prior to filing the waivers, Defendants reasonably believed Stratmann had abandoned this action.[2] When Stratmann filed the waivers of service, Defendants diligently moved to quash or strike the waivers. As explained in the Motion, these circumstances establish good cause and excusable neglect to support Defendants' good-faith, alternative request for an extension of time. (Doc. 26 at 10–11). And, now that Stratmann's application for clerk's default has been rejected, he does not oppose an extension for Defendants to respond. (Doc. 29 at 7).

## CONCLUSION

The Court should quash or strike the waivers of service. Stratmann disregarded Rule 4, Defendants, and the Court. Stratmann's Opposition confirmed each argument Defendants raised in their Motion. Stratmann repeatedly failed to serve Defendants and never followed the waiver procedures outlined in Rule 4. Defendants offered to waive service multiple times, but Stratmann did not accept these offers. And then Stratmann violated this Court's Order by purportedly

[2] From July 23, 2026, the date of the parties' last waiver-related correspondence until September 18, 2026, the date the waivers of service were docketed, Stratmann submitted three different filings in the District of Maryland case. (*See* ECF Nos. 85, 88, 90, *Seakeeper, Inc. v. Starboard Yacht Group, LLC*, No. 1:26-cv-01332-MJM (D. Md.).)

accepting and filing the waivers of service 25 days after the Court's deadline. These actions were strategic, not innocent oversight. The Court should find that Defendants never formally waived service, or at least deny Stratmann's request for an extension and find that Stratmann failed to timely file the waivers. Alternatively, Defendants request that the Court provide Defendants with 30 additional days from the date of its Order to respond to the Complaint.

Dated: October 9, 2026

*/s/ Traci T. McKee*
Traci T. McKee, Fla. Bar. No. 53088
Blake D. Bachman, Fla. Bar No. 1040691
FAEGRE DRINKER BIDDLE & REATH LLP
1500 Jackson Street, Suite 201
Fort Myers, Florida 33901
Tel: (239) 286-6900
Fax: (239) 244-9053
traci.mckee@faegredrinker.com
blake.bachman@faegredrinker.com

*Attorneys for Madison Industries, Inc. and Seakeeper, Inc.*

**CERTIFICATE OF SERVICE**

I, Traci McKee, hereby certify that on October 9, 2026, I filed the foregoing via the Court's ECF system and also served the following via United States mail:

Charles Jacob Stratmann
850 NE 3rd Street
Suite 208
Dania Beach, FL 33004

/s/ *Traci T. McKee*